IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

KYLE DAWSON,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　) Civil Action No. 1:18-cv-971
　　　　　　　　　　　　　　　　　　)
WASHINGTON GAS LIGHT COMPANY,　　 )
ET AL.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　Defendants.　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　)

**MEMORANDUM OPINION**

This matter comes before the Court on Defendants' Motion for Partial Dismissal of Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Plaintiff is a self-described biracial, part Caucasian, part African American, light-skinned man. Plaintiff worked for Defendant Washington Gas, in relevant part, from the summer of 2013 to July 25, 2018. During that time, Plaintiff worked as a crew mechanic, crew leader in-training, and crew leader. Plaintiff also twice participated in the CLDP program with successful completion on the second attempt.

Beginning in the summer of 2013 to fall of the same year, Plaintiff began to experience harsh treatment from his

supervisor in the CLDP program. Plaintiff's supervisor yelled at Plaintiff, gave Plaintiff a very harsh performance review, and stated his dislike for "half-breeds" though ostensibly discussing canines. Plaintiff's supervisor also disciplined him more harshly than other employees outside of Plaintiff's protected classes. For example, Plaintiff was disciplined for a car accident that occurred while on the job for which Plaintiff was not at fault; no other employee was disciplined unless they were at-fault. Plaintiff also received a five-day suspension for hitting a water line that was not properly marked; after a grievance process, this discipline was removed from Plaintiff's record and he received backpay.

Plaintiff was then removed from the CLDP program and his wages were reduced. Plaintiff's next supervisor began also treated him differently than other employees outside Plaintiff's protected classes. Plaintiff believed that his new supervisor also knew about the grievances Plaintiff had filed while in the CLDP program. During his time under this second supervisor, Plaintiff received a ten-day suspension for failure to immediately report a malfunctioning garage door, though through a grievance process this accident was determined to be unavoidable and that Plaintiff had reported it to his supervisor who instructed him not to worry about it. Further, Plaintiff sought to work overtime hours, but this second supervisor

selected a white employee in violation of the union contract over Plaintiff.

Plaintiff met with Defendant Washington Gas's Human Resources department to discuss the harassment he had been facing. After this meeting, Plaintiff did not see anything done by Human Resources to ameliorate the harassment.

Plaintiff filed his first charge against Defendant with the Equal Employment Opportunity Commission (EEOC) in March 2014 claiming race and color discrimination and retaliation between the dates of May 1, 2013 and November 20, 2013. Plaintiff self-filed this charge and did not select the box for "Continuing Action" which typically refers to harassment as opposed to a single act of discrimination. Plaintiff's allegations in the charge, however, do mention harassment. The EEOC opened an investigation and continued to examine evidence until issuing a probable cause determination on April 20, 2018. The EEOC then provided Plaintiff with a Right-to-Sue letter on May 9, 2018.

During the period of the investigation, Plaintiff continued to suffer harsh treatment at the hands of yet more supervisors. From November 2016 to his eventual termination, Plaintiff was under the supervision of Defendants Samuel and Gordon. During this time, Defendant Samuel frequently spoke harshly to Plaintiff and criticized his work product. Defendant Samuel also required Plaintiff to clear certain staffing decisions with him

though other employees outside of Plaintiff's protected class were not subjected to this extra requirement. Plaintiff attempted to meet with Defendants Samuel and Gordon to attempt to resolve the harsh treatment and set expectations for work product. Defendant Samuel left the first meeting in anger and, at the second, stated that further meetings would cause him to "act out."

Soon after this second meeting, Plaintiff informed Defendant Washington Gas of the EEOC determination. Defendant Washington Gas is believed to have informed Defendants Samuel and Gordon. Following notification of the EEOC's determination, Plaintiff received two separate suspensions totaling fifteen days for failure to receive approval for a day off, though Plaintiff found someone to cover his shift, and running a red light, though others outside Plaintiff's protected classes received less harsh discipline for similar actions.

On June 6, 2018, Plaintiff filed his second EEOC charge alleging retaliation and did select the "Continuing Action" box. This second charge covered the dates from March 24, 2014 until June 6, 2018.

On July 25, 2018, Plaintiff was terminated for unplugging his drive camera, a practice he alleges is common among his fellow employees and which does not typically receive discipline.

Plaintiff brought this lawsuit on August 6, 2018 alleging five counts: Race Discrimination under Title VII (Count I); Color Discrimination under Title VII (Count II); Retaliation under Title VII (Count III); Race Discrimination and Creation of a Hostile Work Environment under 42 U.S.C. § 1981 (Count IV); and Retaliation under 42 U.S.C. § 1981 (Count V). Defendant has moved to partially dismiss portions of each count for lack of subject-matter jurisdiction and failure to state a claim for which relief can be granted.

A motion to dismiss tests the sufficiency of the complaint. See Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). On a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded facts as true and construe those facts in the light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Reyes v. Waples Mobile Home Park Ltd. P'ship, 903 F.3d 415, 423 (4th Cir. 2018). The complaint must provide a short and plain statement showing that the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2), and it must state a plausible claim for relief to survive a motion to dismiss, Iqbal, 556 U.S. at 679; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). While courts use the elements of a prima facie case to evaluate allegations of discrimination in a complaint, a plaintiff does not need to sufficiently establish a prima facie case at the pleading stage to survive a motion to dismiss.

Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511-12 (2002); Woods v. City of Greensboro, 855 F.3d 639, 648 (4th Cir. 2017). In a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a court may look beyond the four corners of the complaint in order to satisfy itself of jurisdiction. Mims v. Kemp, 516 F.2d 21, 23 (4th Cir. 1975).

Defendants first seek to have portions of Counts I-III dismissed for lack of subject-matter jurisdiction. Defendants first argue that Plaintiff did not reallege race and color discrimination in his second EEOC charge and thus they are barred for failure to exhaust administrative remedies.

Plaintiff responds to this argument by stating that the Fourth Circuit has recognized the "generally accepted principle that the scope of a Title VII lawsuit may extend to 'any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the [EEOC].'" Hill v. Western Elec. Co., Inc., 672 F.2d 381, 390 n. 6 (4th Cir. 1982) (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970)). The Fifth Circuit in Sanchez stated that this principle followed inherently from the statutory scheme of Title VII in which an EEOC charge merely opens the investigatory and conciliatory procedures of the EEOC. 431 F.2d at 466. Further, "it is obvious that the civil action is much more intimately related to the

6

EEOC investigation than to the words of the charge which originally triggered the investigation." Id. As employers would be on notice throughout the entirety of the administrative investigation, this logic would not eviscerate "the primary purposes" of the administrative exhaustion requirement. Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005). Accordingly, the Court has subject-matter jurisdiction over the race and color discrimination claims arising out of the facts alleged by Plaintiff of events that occurred between May 1, 2013 and April 20, 2018.

Second, in Counts I and II, Plaintiff raises claims of a hostile work environment. Defendants contend that Plaintiff's failure to select the "Continuing Action" box on his first EEOC charge prevents a claim for hostile work environment. They add to this that an "'allegation of a discrete act or acts in an [EEOC] charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct.'" Harris v. Rumsfeld, 428 F. Supp. 2d 460, 469-70 (E.D. Va. 2006) (quoting Chacko, 429 F.3d at 509). Defendants further argue that Plaintiff's statements in the second EEOC charge are conclusory and thus may not be the basis of a claim here.

"[A]llegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." Evans v. Techs. Applications &

7

Serv. Co., 80 F.3d 954, 962-63 (4th Cir.1996). Lawyers, however, do not typically prepare administrative charges, so they are to be liberally construed. Chacko, 429 F.3d at 509; Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 460 (4th Cir.1988).

The Defendants reliance on Harris and Chacko is misplaced because they are factually dissimilar to the present case. In Harris, the plaintiff initially filed an EEOC charge alleging discrimination in a single failure to promote then filed suit claiming an ongoing pattern of discrimination. 428 F. Supp. 2d 460, 469. Similarly, in Chacko, the plaintiff filed two EEOC charges alleging three specific acts at specific times by supervisors, then at trial, the plaintiff proceeded primarily on a theory of co-worker harassment over the entirety of his time with his employer. 429 F.3d at 510-12. In both cases, courts found that these subsequent claims greatly exceeded the scope of the EEOC charging documents.

In the instant case, Plaintiff alleged in his first EEOC charge a number of instances in which he was discriminated against or subjected to harassment. While he did not select the "Continuing Action" box, such a lengthy series of events, as well as the fact that Plaintiff stated there was harassment in the particulars section of the charge, would generally put Defendants on notice that Plaintiff was alleging harassment and

the creation of a hostile work environment. "Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation." Chacko, 429 F.3d at 510. As Defendants were on notice of the potential for hostile work environment claims, this Court has subject-matter jurisdiction over them.

Defendants next move to argue that Plaintiff does not allege claims for which relief may be granted. Defendants begin by arguing that Plaintiff has not sufficiently alleged facts for his Title VII claims. "Congress did not intend Title VII to provide redress for trivial discomforts endemic to employment." Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999). Thus, plaintiffs must allege an "adverse employment action[, which] is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation and alteration omitted), cert. denied, 552 U.S. 1102 (2008). While this is so, not every fact alleged need be related to an ultimate or "adverse employment action." A plaintiff may use other events, including those not raised in charging documents, as background evidence to demonstrate discriminatory animus. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

In the case at bar, Defendants contend that certain alleged instances should be excluded because they are not "adverse

employment actions." Plaintiff, however, has alleged a multitude of unfortunate instances he endured while working for Defendants. While any single instance may not itself be sufficient for a claim of discrimination, when they are combined, they may demonstrate discriminatory animus in one or more qualifying instance. Further, a number of the instances described would constitute "adverse employment actions" as he alleges that he had his wages reduced, received numerous severe disciplinary actions, and was ultimately terminated. Plaintiff also alleges that his supervisors knew about his opposition activity throughout his employment at Defendant Washington Gas and that disciplinary actions were frequently taken soon after complaints were lodged. As a result, Plaintiff has stated a claim for discrimination and retaliation for which relief may be granted.

Second, Defendants contend that Plaintiff's claims under Section 1981 are barred by the statute of limitations to the extent that they extend beyond four years prior to the filing of this suit. See 28 U.S.C. § 1658. Plaintiff concedes this point and states that he does not bring any claim for actions outside the statute of limitations. As a result, Plaintiff's Section 1981 claims for actions within the statute of limitations, i.e. after August 6, 2014, will be allowed to go forward.

Lastly, Defendants contend that Plaintiff's Section 1981 claims cannot go forward against Defendants Samuel and Gordon because there are no allegations that they were personally involved in the discriminatory acts. Individual liability under Section 1981 is established by "some affirmative link to causally connect the actor with the discriminatory action, and the claim must be predicated on the actor's personal involvement." Hawthorne v. Virginia State Univ., 568 Fed. Appx. 203, 204-05 (4th Cir. 2014) (internal quotations omitted). Thus, only intentional actions by an individual that cause violations of Section 1981 may be used to impose liability. See, e.g., Benjamin v. Sparks, 173 F. Supp. 3d 272, 283 (E.D. N.C. 2016).

Here, Plaintiff alleged that Defendant Samuel knew about Plaintiff's opposition to his discriminatory conduct and that Defendant Samuel subjected Plaintiff to both discriminatory and retaliatory discipline, even to the point of terminating Plaintiff. Plaintiff also alleges that Defendant Gordon, as Plaintiff's second-level supervisor, was well aware of Defendant Samuel's actions, as well as Plaintiff's opposition activity, participated in a meeting where Plaintiff attempted to resolve the issues, and did nothing to prevent Defendant Samuel from issuing discipline against Plaintiff, thus ratifying his conduct. Defendants contend that Defendants Samuel and Gordon did not have the power to terminate Plaintiff, however, that is

11

an argument for a different time. Additionally, there is no contention that Defendants Samuel and Gordon did not have the authority to issue discipline which eventually built to Plaintiff's termination. At this stage, Plaintiff has stated plausible facts to support a claim for which relief can be granted.

For the reasons mentioned, the Court concludes that it has subject-matter jurisdiction over Plaintiff's claims in Counts I and II for race and color discrimination occurring between May 1, 2013 and April 20, 2018 and that he has stated claims for which relief can be granted in all Counts and dismissal is therefore inappropriate. Defendant's motion will be denied. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
February 19, 2019